**Joseph CAPOBIANCO, Petitioner-Appellant,**

v.

**Hon. Melvin LAIRD, Secretary of Defense; Hon. Stanley Resor, Secretary of the Army; Commanding Officer, Armed Forces Examining and Entrance Station, Fort Hamilton, Brooklyn, New York, Respondents-Appellees.**

**No. 529, Docket 34139.**

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1970.

Decided March 31, 1970.

Paul G. Chevigny, New York City (Alan H. Levine, New York Civil Liberties Union, New York City, of counsel), for petitioner-appellant.

Steve C. Arniotes, Asst. U. S. Atty. (Vincent T. McCarthy, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y.), Edward R. Neaher, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., of counsel, for respondents-appellees.

Before LUMBARD, Chief Judge, and FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge.

This appeal from an order of the District Court for the Eastern District of New York denying a writ of habeas corpus is another of the increasing number of cases relating to claims that conscientious objection had crystallized after notice to report for induction.

Joseph Capobianco, a Roman Catholic, enjoyed deferment as an undergraduate student (II–S) until July, 1968, when he was classified I–A. He requested an occupational deferment in October 1968 as a caseworker with the New York City Department of Social Services and in April 1969 as a high school teacher at St. Pius the Tenth School in Queens. Both requests were denied and on May 1, 1969, he was ordered to report for induction on May 20. This was postponed to allow him to appear before the local board in support of his application for occupational deferment. On May 29 he advised the board that he was a conscientious objector and requested the proper forms. The board sent these and further postponed induction. On June 24 Capobianco filed the completed forms, in which he alleged that due to circumstances beyond his control occurring on or about May 29 he had become a conscientious objector. He supported his application with five letters attesting to his character and sincerity.

The local board advised Capobianco on August 13, 1969, of its decision that the evidence submitted "does not justify the reopening of your case and reconsideration of your present classification" and ordered him to report for induction on August 21. The board placed the following memorandum in Capobianco's Selective Service file:

Applicant appeared. Form 150 read and reviewed, and summary of Form 150 read and reviewed. Applicant has tried on various occasions to seek a deferment through teaching and Social Service. When all else failed applicant suddenly realized on May 29, 1969 that he is a C.O. Board does not feel that these are his religious beliefs and were arrived at not because of religious convictions but to avoid service in Armed Forces.

Capobianco submitted to induction but immediately filed a petition for habeas corpus in the District Court for the Eastern District of New York. Judge Rosling conducted a hearing and denied the writ.

In Paszel v. Laird, 426 F.2d 1169, another panel of this court including the writer has been presented with the question whether the making of a *prima facie* case for reclassification after a notice to report for induction, which we believe Capobianco did here, automatically entitles a registrant to a reopening of his

classification, as Judge Bartels there held, or, as the Government urges, merely requires the local board to consider the request for reopening and, in the event of denial, to support this with a basis in fact. We do not find it necessary to resolve that issue here since, taking the view more favorable to the Government, the hearing showed the lack of any basis in fact for the refusal to reopen.

The petitioner testified that his beliefs crystallized during the week of May 29, 1969, after he had followed procedures of his Roman Catholic faith for resolving questions of morality; but, pursuant to instructions of the Court, he did not testify about the substance of his beliefs. Lester Grossman, a member of the local board, testified that if petitioner were sincere, "it would have been brought to the attention of the Board long before"; that he did not believe the petitioner's claim because of his "many deferments"; that he felt that petitioner's Form 150 had been "prepared by others * * * than himself" and that "these words did not come from that man"; and that his overall feeling was that Capobianco lacked sincerity or conviction. We take these in turn.

■■■■ While the board was justified in considering the lateness of Capobianco's claim as reflecting on the reality of the crystallization of his conscientious objection, we have held "it would be improper to conclude that an individual is not a genuine conscientious objector merely because his beliefs did not ripen until after he received his notice," United States v. Gearey I, 368 F.2d 144, 149–150 (2 Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967). Also, while an indication that Capobianco had a ghost-writer for his Form 150 might cast doubt on his sincerity, see United States v. Corliss, 280 F.2d 808, 815–816 (2 Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960), the suggestion seems peculiarly unwarranted here. Capobianco has a liberal arts degree from St. John's University,

where he took at least one course in theology, and the document he submitted would seem well within the range of his learning and ability. Moreover, this was not a hasty job. When he appeared before the board in early June, prior to the filing of his form, he read from notes he had been taking in preparation for answering the Form 150 questions.

We assume Mr. Grossman's reference to Capobianco's "many deferments" to include his two requests for occupational deferments in addition to his single actual deferment. Their nature, however, was in no way inconsistent with his conscientious objector claim, except for the fact that they were raised instead of it, and that is entirely consistent with late crystallization. We would have a very different case if Capobianco had requested an occupational deferment based on, for example, work in a munitions company, compare United States v. Corliss (Herold), supra, 280 F.2d at 816–817. Then the asserted shift in beliefs would be so profound that there would be a basis for doubting whether a shift had taken place at all.

The only other point advanced by Mr. Grossman was the general observation:

> We came to the opinion, based principally on his conduct and statements at the hearing that he was not [sincere].

> He seemed to me to lack sincerity or lack conviction. His manner, his bearing didn't sound like one who really believes what he is saying.

One cannot deny the influence of intuition and it may not be a bad place to start in forming an opinion. But in this case it was not only the beginning but also the ending, for there is no evidence to indicate that Capobianco said anything that threw doubt on his sincerity or that he was evasive or shifty during the interview. The case is thus unlike United States v. Corliss, supra, 280 F.2d at 814–815, where we found "enough in the printed record to support the determination of lack of sincerity."

We recognize that in holding there was no basis in fact for the Board's refusing to reopen Capobianco's classification, we may be opening a rather large door through which purported late crystallizers can enter. However, we fail to see how this danger can be altogether eliminated in the light of our holding in *Gearey I* that lateness of assertion alone is not a sufficient predicate for a finding of lack of sincerity. The remedy must lie in a searching examination and a clear articulation of reasons by the local boards.

We therefore reverse the order and direct the district court to issue the writ, with instructions to the local board to reopen Capobianco's I–A classification and consider his conscientious objector claim.