**James T. GRESHAM, Petitioner,**

v.

**Reginald A. FRANKLIN, General Stanley Larsen, and Secretary Stanley Resor, Respondents.**

**Civ. No. C–70–1250.**

United States District Court,
N. D. California.

July 29, 1970.

---

Gary I. Near, San Francisco, Cal., for petitioner.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for respondents.

*Order and Opinion Granting Petition for Writ of Habeas Corpus*

GERALD S. LEVIN, District Judge.

Petitioner James T. Gresham is presently a Specialist 4th Class in the United States Army stationed at the Presidio in San Francisco, California. He brings this petition for a writ of habeas corpus in order to secure his discharge from military service as a conscientious objector, his application therefor having been denied by the Army.

Gresham did not seek classification as a conscientious objector until after his entry into the Army. Upon crystalization of his beliefs as a conscientious objector, Gresham made a proper request for discharge pursuant to Department of Defense Regulation 1300.6 and Army Regulation 635-20.

The sequence of events pertinent to Gresham's claim is as follows. Gresham was inducted into the United States Army on January 3, 1969. On March 10, 1969, after completing basic combat training at Fort Lewis, Washington, Gresham was assigned to the Sixth United States Army Band at the Presidio in San Francisco, California.

On February 12, 1970, Gresham was issued orders directing him to report on March 26, 1970, to the United States Overseas Replacement Station, Fort Lewis, Washington, for assignment to Vietnam. On March 6, 1970, Gresham filed his application for discharge as a conscientious objector.

Thereafter, and in accordance with applicable procedure under Army Regulation 635-20, Gresham was interviewed by a chaplain, an O-3 hearing officer, a psychiatrist, and his commanding officer. The chaplain found that Gresham's decision to apply for conscientious objector status was "based upon a philosophic humanitarian concern rather than a strongly religious conviction in the traditional pattern." The chaplain found his sincerity to be "above question."

The O-3 hearing officer noted that Gresham's application was filed late—i. e., after Gresham had received orders to report to Vietnam. Nonetheless, after discussing Gresham's beliefs and military experiences, the O-3 hearing officer, like the chaplain, found Gresham to

be sincere and recommended that his application be approved.

The required psychiatric examination of Gresham revealed no evidence of psychiatric disease.

Gresham's commanding officer recommended disapproval of his application, noting as his only reason that "EM did not apply for discharge from the Army until after receipt of orders for Vietnam."

The next higher commanders, the Commanding Officer, Sixth Army Special Troops and the Commanding General, Sixth United States Army, both recommended disapproval of Gresham's application on the grounds, respectively, that such application was based on philosophical views and primarily on sociological and philosophical views.

The Department of the Army, Class I–O Conscientious Objector Review Board disapproved Gresham's application with the following reason:

> The threshold determination in each conscientious objector case is the issue of sincerity. The Board finds that Gresham is not sincere. He does not sincerely hold the views that he professes in his application. Gresham did not apply until he received orders for Vietnam. The convenience of this timing to Gresham's external situation is to [sic] obvious to disregard. It creates great suspicion as to his sincerity, and this suspicion is confirmed by Gresham's unit commander, CW4 Reginald Franklin. Warrant Officer Franklin had the opportunity to observe Gresham first hand, and, therefore, his opinion as to Gresham's sincerity is entitled to considerable weight.

On June 10, 1970, notification of this disapproval was sent to Gresham.

Despite the opinions of the Commanding Officer, Sixth Army Special Troops and the Commanding General, Sixth United States Army, to the effect that Gresham's beliefs were philosophical or sociological, there can be little doubt that his views were sufficiently "religious" within the meaning of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) to qualify him for discharge as a conscientious objector. *See also* United States v. Coffey, 429 F.2d 401 (9th Cir.1970).

■■ The only remaining question, then, is that which is at the heart of every conscientious objector application, namely whether Gresham's views are sincerely held. This court's role is limited to finding whether there exists a basis in fact for the Army's determination that Gresham's views are not sincerely held.

The Class I–O Conscientious Objector Review Board relied on Gresham's late filing and on the recommended disapproval of his unit commander in finding him to be insincere. The unit commander, however, articulated only lateness of filing as the basis for his recommended disapproval, so in fact the Review Board was relying solely upon lateness of filing in disapproving Gresham's application.

■ Lateness in filing an application for discharge as a conscientious objector may be an objective factor supporting a finding of the applicant's insincerity, Speer v. Hedrick, 419 F.2d 804, 806 (9th Cir.1969); Application of Coryell, 307 F.Supp. 209, 212 (N.D.Cal.1969), but such factor will not support a denial of the application unless other factors are present also pointing to a finding of insincerity. In the present case, as in others, it was the very fact of being ordered to Vietnam which had an epiphanous effect on Gresham and brought him face to face with the clash between his own views and the role he would have to play if he remained in the armed services. As another judge of this court noted recently, "Given the imprecise psychological process at work the court should be careful not to interpret such crystallization process in a way which

denies relief to sincere conscientious objectors." Goodwin v. Laird, 317 F. Supp. 863 (N.D.Cal.1970, per Zirpoli, J.).

Another recent case expressed the approach to be taken in cases such as the present one, and with such reasoning we are in full agreement:

It is to be borne in mind that assuming *arguendo* that the prospect of assignment in Vietnam may have played a role in petitioner's decision, this would not in and of itself support a basis in fact for the Army's refusal to accord this petitioner his rights under the law. * * * Indeed there is no longer any doubt that the mere fact that the prospect of combat duty in Vietnam may have acted as a catalyst and may have affirmatively been the stimulus for the submission of a request for discharge is not, standing alone, sufficient to represent a basis in fact to reach the conclusion made in this case. Ross v. McLaughlin, 308 F.Supp. 1019, 1024 (E.D.Va.1970).

■ The only other conceivable basis in the record to support the Army's denial of Gresham's application is his statement to the chaplain, contained in the latter's interview report, to the effect that he might not have applied for discharge as a conscientious objector had he received orders for some overseas area other than Vietnam. Such recitation is to be accorded little if any significance for two reasons. First, it is not the function of this court to search the record for some basis to affirm the Army's decision when the reasons given therefor are inadequate. *See* United States ex rel. Morton v. McBee, 310 F. Supp. 328, 332 (N.D.Ill.1970). Neither of the commanders who recommended disapproval of Gresham's application nor the Review Board relied upon or even alluded to his statement to the chaplain in reaching their respective decisions. Second, and more importantly, the chaplain found Gresham to be sincere despite the statement, and it would ill befit this court to judge the weight and context of such statement without the advantage of presence and demeanor which the chaplain took into account.

Accordingly, it is hereby ordered that James T. Gresham's petition for a writ of habeas corpus is granted, and that, being illegally restrained of his liberty, he be discharged from the custody of respondents.