Lee **LOVALLO,** Petitioner-Appellee,

v.

Stanley R. **RESOR,** Secretary of the Army, et al., Respondents-Appellants.

No. 919, Docket 71–1131.

United States Court of Appeals, Second Circuit.

·Argued April 23, 1971.

Decided May 24, 1971.

Lloyd H. Baker, Asst. U. S. Atty., E. D. N. Y. (Edward R. Neaher, U. S. Atty., and David G. Trager, Asst. U. S. Atty., E. D. N. Y., on the brief), for appellants.

Frederick H. Cohn, New York City, for appellee.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

Lee Lovallo, an enlistee and specialist E4 in the United States Army, filed a

petition in the district court for a writ of habeas corpus to effect his release from military service on the ground that he was a conscientious objector. This action followed a denial by the Army's Conscientious Objection Review Board of his application for a discharge from the Army which he had filed on September 18, 1970 on the same ground. The district court held that there was no objective evidence upon which the Department of the Army could have based its denial and granted the relief requested. The principal issue on appeal is whether there was any "basis in fact" for the Army's determination that petitioner's beliefs lacked the necessary sincerity.

At a time when Lovallo faced draft induction he admittedly looked for an easy way out and when his attempt to join the Peace Corps failed, he enlisted in the Army as a bandsman because he considered it better to carry an instrument than a weapon. In March of 1969 he was assigned to the 26th Army Band, Fort Wadsworth, Staten Island where he expected to remain throughout the period of his enlistment.[1] On August 5, 1970, however, he received notice that he was to be transferred to Korea. It was this order for reassignment and the circumstances which surrounded it that precipitated his application for discharge as a conscientious objector.

In the application petitioner stated, "My condemnation of killing is a religious conviction based upon both formal and derived religious beliefs." He recounted his life-long instructions as a Roman Catholic, his study of philosophy at a university, and the influence of fellow members of the Army band from which his "conscience assumed a new depth of commitment to beliefs that [he] had long before internalized" as the sources from which his convictions derived. Petitioner explained that his ideas concerning the sanctity of life and his repugnance to participation in military operations did not mature until he received his orders to Korea and that ultimately it was this scheduled transfer that effected the fruition of his beliefs in the form of his application for discharge as a conscientious objector.

Following prescribed procedures,[2] the petitioner was interviewed on September 21, 1970 by Lt. Col. Lenk, Staff Chaplain, who found Lovallo "sincere in his belief," but as the Catholic Chaplain he was troubled because in Lovallo's personal statement he made reference to the commandment "Thou shalt not kill" as the eighth instead of the fifth commandment, an error which, the Chaplain said one "versed in the Catholic faith would not make." The Chaplain added, "Then, too, after reading the case, it is my opinion that Specialist Lovallo is not a Conscientious Objector in the strict sense of the word. I believe that Specialist Lovallo is sincere in his belief but the source of his belief may be questionable." On September 24, 1970 the petitioner was given a psychiatric examination by Captain Phillips who found him to be a "sincere sounding young man,"[3] "psychiatrically cleared for any administration [sic] action deemed appropriate by command." That same day Lt. Col. McDonough, a hearing officer familiar with the policies and procedures relating to conscientious objector matters,[4] interviewed the petitioner and reported that he was "sincere in his convictions."

1. In his application petitioner related that he had been unofficially reassured that once stationed at Fort Wadsworth the chances were good that he would remain there until the termination of his enlistment.

2. Department of Defense Directive No. 1300.6, 2 SSLR 2325 (May 10, 1968), and AR 635–20, 2 SSLR 2343 (July 31, 1970).

3. The examining psychiatrist is required to do no more than determine that the applicant is free from psychiatric disorder. AR 635–20(4) (b) (2); United States ex rel. Sheldon v. O'Malley, 420 F.2d 1344, 1346–1347 (D.C.Cir.1969).

4. AR 635–20(4) (b) (3).

On the following day, September 25, 1970, Personnel Clerk Kase submitted a sworn statement which described petitioner's displeasure when he was informed that he had been included among those assigned to Korea.[5] When Lovallo was first advised that he was about to be transferred, he indicated that reassignment would cause him no personal difficulties; but Kase said, "When I mentioned Korea his happy attitude changed completely. He got quite upset and he told me that he was informed by the company that he was going to Germany and I informed him that he was going to Korea and at no time was he ever on orders for Germany. He left my office in a very bitter and depressed mood."

To these reports petitioner's commanding officer, Chief Warrant Flores, added his recommendation that the application for discharge be denied. He based his recommendation upon two facts: first, that petitioner had not indicated his intention to apply for a discharge when he was asked on September 10th and 11th whether he would "clear post" on September 14, 1970, the date on which petitioner requested a seven-day delay of orders to compile his application; and second, that although petitioner reported that his beliefs "crystallized" on September 12, 1970, three letters supporting his application were written a day or two before that date. From this Flores concluded that Lovallo "chose to mislead the undersigned * * * as to his intentions. * * * Therefore I consider Sp. 4 Lovallo's sincerity and integrity questionable."

After reviewing the petitioner's file, Lt. Hall, Assistant Adjutant General at Fort Hamilton, recommended disapproval of the application and forwarded it on October 1, 1970, to the Army's Conscientious Objection Review Board. In an opinion dated November 9, 1970, the Board disapproved and rejected petitioner's application on the ground that Lovallo was not sincere. The Board placed great weight on the statement of Chief Warrant Flores; it also noted the report of Chaplain Lenk, and noted with interest the affidavit of Kase. The district court, however, found that none of the enumerated factual findings afforded a "basis in fact" for the Board's denial and granted the writ.

■■ To be conscientiously opposed to participation in war implies by definition that the objector in fact entertains the belief to which he has given expression. United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965). Thus, although a claimant's statement may set forth a prima facie case for discharge, the military reviewing agency may determine that the claimant is not to be believed and deny his application on that basis. Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 99 L.Ed. 428 (1955); see Hansen, Judicial Review of In-Service Conscientious Objector Cases, 17 U.C.L.A.L.Rev. 975, 998–999 (1970). Where the applicant has stated his beliefs with apparent sincerity and no adverse demeanor evidence has been introduced, the Conscientious Objection Review Board must predicate any finding of insincerity upon objective evidence affording a rational basis for the Board's refusal to accept the validity of the applicant's claims. Witmer v. United States, *supra*; United States v. James, 417 F.2d 826, 832 (4 Cir. 1969); Kessler v. United States, 406 F.2d 151, 156 (5 Cir. 1969). Absent such evidence, the military's administrative de-

---

5. Although AR 635–20 does not expressly authorize the submission to the reviewing agency of documents other than the applicant's personal statement and the reports of the chaplain, psychiatrist, hearing officer and commanding officer, Department of Defense Directive No. 1300.6 (VI) (B) (5) provides:

The application and supporting papers will be forwarded together with any other pertinent information known to the immediate command, to Department headquarters for individual determination of the action on the basis of the facts and special circumstances of the case.

termination lacks a "basis in fact" and is, therefore, rendered in violation of its own directive.[6]

■ Applying this standard to the evidentiary materials before the Board, we agree with the district court that the statement of Chief Warrant Flores did not afford a "basis in fact" for the Board's denial. The fact that petitioner apparently requested letters supporting his application several days before disclosing his intention to Flores did not necessarily show a lack of integrity or demonstrate his insincerity. The regulations permitted Lovallo only seven days in which to compile his application; under the circumstances of the present case no more should be inferred from the fact that he began to acquire the requisite documentation three days before he reportedly made his ultimate decision than that he wanted to be prepared to act upon that decision when and if he made it.

Chaplain Lenk's concern over the petitioner's technical error in citing the numerical position of the particular commandment is not the kind of evidence that *"substantially* blurs the picture painted by the [applicant] and thus casts doubt on his sincerity." Kessler v. United States, *supra.* However, even though the Chaplain thought Lovallo was sincere he reported that his claimed beliefs had a questionable foundation and that he did not, strictly speaking, consider Lovallo a conscientious objector. The Board was not bound to conclude that the latter rested solely on the misnumbered commandment. A reading of the petitioner's application to the Board indicates that at some points he asserted a hostility to all wars and at others he espoused a doctrine of differentiation between just and unjust wars and implied he would refuse only to engage in the latter. Likewise he at times expressed hostility to all use of force or violence; at other times he conceded that under certain, not very clearly delineated, circumstances some violence was proper.

■ There was evidence before the Board that Lovallo showed no objection to an assignment to Germany but objected strongly to being ordered to Korea. This taken together with his expressed belief in the right of an individual to differentiate between just and unjust wars furnished a sufficient factual basis for the Board to decide that Lovallo was claiming the right to pick and choose the war in which he would engage, based upon his belief in whether or not it was just. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

The district court erred in ruling that Kase's affidavit afforded no "basis in fact" for the determination of insincerity. The Army could rationally infer from this account that petitioner's application was in large measure the product of his disappointment at being assigned to Korea rather than to Germany. The Army might justifiably have found that the anticipation of deployment as a bandsman to a less desirable duty station was not the kind of prospect that could legitimately bring to fruition a conscientious objection to participation in war.

The Board's opinion does, therefore, disclose a legally sufficient reason for its denial. That subjective determination was, in turn, predicated upon objective evidence affording a "basis in fact" for the Board's conclusion.

The order of the district court is reversed and the petition is dismissed.

---

6. The "basis in fact" standard of review first made its appearance in Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed.2d 567 (1946). It was reaffirmed in the conscientious objection context in United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850 (1965), and has been uniformly applied on appeals from the denial of an in-service conscientious objector application, United States ex rel. Donham v. Resor, 436 F.2d 751 (2 Cir. 1971).