**UNITED STATES of America ex rel. Neil Bruce CHECKMAN, Petitioner-Appellant,**

**v.**

**Hon. Melvin LAIRD, Secretary of Defense, et al., Respondents-Appellees.**

**No. 822, Docket 72-1361.**

United States Court of Appeals, Second Circuit.

Argued May 25, 1972.

Decided Oct. 27, 1972.

776

Donald L. Doernberg, New York City (Jeremiah S. Gutman, Levy, Gutman, Goldberg & Kaplan, New York City, on brief), for petitioner-appellant.

Daniel James Dillon, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., David G. Trager, Asst. U. S. Atty., on brief), for respondents-appellees.

Before LEVENTHAL,* FEINBERG and TIMBERS, Circuit Judges.

LEVENTHAL, Circuit Judge:

On May 6, 1971, appellant Checkman applied for discharge as a conscientious objector from the Reserve Officer's Training Corps (ROTC) at the First United States Army Instructor's Group, Polytechnic Institute in Brooklyn. By a divided vote, the Army's Conscientious Objector Review Board (CORB) denied his application in a memorandum of January 13, 1972. Appellant filed a petition for Habeas Corpus relief. The District Court dismissed his petition, and he appeals. We think dismissal of the petition, on the record as it now stands, was erroneous and we remand for further proceedings not inconsistent with this opinion.

## I. FACTUAL BACKGROUND

Mr. Checkman enlisted in the Army ROTC unit at the Polytechnic Institute of Brooklyn in September 1969. At that time he was a full-time second year student at Brooklyn Law School. The preceding summer he had attended a six-week basic training course at Fort Ben-

ning, Georgia. During the course of the next 20 months he satisfactorily completed the remaining requirements for commission as a Second Lieutenant in the U. S. Army Reserve, including attendance at the Advanced Summer Camp training at Indiantown Gap, Pennsylvania.

On May 6, 1971, Checkman filed an application for discharge as a conscientious objector pursuant to the provisions of Department of Defense Directive (DoD) 1300.6 and Army Regulation (AR) 135–25. The application states that at the time of his enlistment, he did not feel that he was, by reason of his religious training and belief, conscientiously opposed to participation in war in any form, within the meaning of 50 U.S.C.App. § 456(j); [1] that significant changes in his life and thinking described in his application, have resulted in such conscientious opposition.

As required by military regulation, DoD 1300.6.VI.C, D; and AR 135–25(6) (b)(1), (2), (3), Checkman was interviewed by the Deputy Staff Chaplain as to the nature and source of his conscientious objection, by Major James Weiss, who had been appointed Hearing Officer, and by a psychiatrist. The Chaplain, Lt. John Steavy, reported as follows:

> [Checkman's] position is founded upon his opposition to war as a solution to international problems.

> I have no question that he is completely sincere in his convictions.

These interviews were held May 18, 25 and June 1, 1971, and reports were duly filed. On May 26, 1971, the day after his interview with appellant, Major Weiss filed his report recommending the

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. Appellant's appendix (AA) at 14: "This [enlistment in ROTC] would allow me to complete my education and fulfill my military obligation which, at that time, I did not perceive to be in conflict with my moral and ethical values." Applicable regulations provide that a person is not entitled to CO status on the basis of beliefs that had matured before, but were not asserted until after, entry into the military service. DoD 1300.6.IV.A.1. This case does not involve any challenge to that regulation or what is, apparently, the "waiver" theory underlying the regulation. See Hansen, Judicial Review of In-Service Conscientious Objector Claims, 17 U.C.L.A.L.Rev. 975 (1970) and sources cited at notes 128–136.

application for concientious objector status be disapproved.

The psychiatrist found him "a sincere sounding young man with no evidence of psychiatric illness or disease." The psychiatrist found no basis on which to recommend disposition of Checkman's application through medical channels.

Checkman's commanding officer, Lt. Col. Clarence Ruff, commented adversely on the application and forwarded it through military channels to the CORB. The CORB, on a 2–1 vote, recommended disapproval of the application in a memorandum dated January 13, 1972. It summarized its reasons as follows:

> The Board believed that Cadet Checkman's application was based on grounds of policy, pragmatism and expediency. Moreover, the Board felt that Applicant was objecting to the war in Viet Nam rather than to participation in war in any form.
>
> . . . . . .
>
> In summary, the Board did not believe that Cadet Checkman was sincere in his stated conscientious objector beliefs, nor was his application founded on lawful grounds. The burden of proof to establish credibility and adherence to the governing law rests solely on the applicant.

The District Judge found a "basis in fact" for the CORB's conclusions as to appellant's "policy, pragmatism and expediency" and insincerity and denied his petition for habeas corpus.

## II. ABSENCE OF ADEQUATE RECORD SUPPORT FOR BOARD DETERMINATION

■ Checkman's application states a *prima facie* case for conscientious objector (CO) status, and its core element of an opposition to war in any form,[2] derived from religious training and belief. Checkman's application sets forth that his opposition derives from moral and ethical beliefs that, while not specifically identified to any organized religion,[3] or necessarily to a belief in a supreme being,[4] were drawn in part from the tenets of various recognized creeds[5] and occupied "the same place in his life as the belief in a traditional deity holds in the lives of [others]," [6] United States v. Seeger, 380 U.S. 163, 187, 85 S.Ct. 850, 865, 13 L.Ed.2d 733 (1965).

It was the CORB's position that Checkman failed each of the three tests for Congressionally-recognized conscientious objection: that his objection to war was (a) selective, (b) derived from political expediency and (c) not sincere,

2. See AA 8: "I cannot, ethically, or morally, allow myself to become a taker of life." See also AA 11:
 "To participate in war, is to participate in the taking of life, the snuffing-out of your brethren, the extinguishing of a fellow life-force. I can find no excuse for my willing participation in the demise of others."

3. See AA 9:
 "Since many nations and major organized religions pay only lip service to the teachings of peace, and choose to look in the Bible for justification for their trespasses against humanity, I must reject organized religion."

4. See *id.*:
 I do not necessarily believe or disbelieve in a Supreme Being. I can honestly conclude in my own mind that whether a Supreme Being exists or does not exist

is a question beyond my solution, and therefore personally irrelevant.

5. See AA 10:
 While rejecting organized religion in my search for the true meaning in life, I do not reject that which I find meaningful in their teachings. I will be the first to admit that in a large part I am the product of my environment, of my culture, of my parents' beliefs. I gladly accept the humanistic teaching of Judaism. As a partial product of my environment, I also have learned some of the teachings of Christ. Those that conform to my inner guide, I embrace, those that do not, I reject.

6. See AA 9:
 Deep within me, there is an ethical conscience that guides my day-to-day life. . . . It guides my every conscious action as if it were a higher and better being, a "God" if you must.

insofar as it purported to be other than (a) and (b).

### A. Doctrine of judicial review of basis-in-fact for conscientious objector decisions

█ This case calls for an application of the doctrine that a court, in reviewing a decision denying conscientious objector (CO) status, will ascertain whether there is a "basis in fact" for the decision. This standard emerged in judicial doctrine in selective service classification matters, see Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946), was reaffirmed in the conscientious objector context, see United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and incorporated by the legislature in the Selective Service Act of 1967, 50 U.S.C.App. § 460(b)(3). It has also been applied in the cases involving an in-service conscientious objector application. See United States ex rel. Donham v. Resor, 436 F.2d 751, 753 (2d Cir. 1971) ("the standard is the same as in draft cases"); Lovallo v. Resor, 443 F.2d 1262, 1265 (2d Cir. 1971); Hammond v. Lenfest, 398 F.2d 705, 716 (2d Cir. 1968).

Decisions in this area often turn on the contours of the individual case. However, this court has rejected the notion that a penetrating reconstruction of it decisions reveals that while this court purports to apply the same standard as the other circuits it in fact applies a more narrow standard of review, and in fact requires upholding of an Army denial of an in-service CO application as long as there is a mere scintilla of evidence in support. Dix v. Resor, 449 F.2d 317 (2d Cir. 1971). Indeed, in Lovallo v. Resor, supra, we took pains to note our congruence with the approach of other circuits, including notably Kessler v. United States, 406 F.2d 151 (5th Cir. 1969), and we said that although the military is not required to accept the prima facie case for discharge made out

in the applicant's statement, and may determine that he is not to be believed,—

Where the applicant has stated his beliefs with apparent sincerity and no adverse demeanor evidence has been introduced, the Conscientious Objection Review Board must predicate any finding of insincerity upon objective evidence affording a rational basis for the Board's refusal to accept the validity of the applicant's claims.* Absent such evidence, the military's administrative determination lacks a "basis in fact" and is, therefore, rendered in violation of its own directive. * * * [What is required is] the kind of evidence that "substantially blurs the picture painted by the [applicant] . . ." (443 F.2d at 1264–1265).

The central question is whether the record contains the objective basis requisite for rejection of the application.

### B. Existing law requires statement of reasons for adverse decision on CO application.

The military regulations require a statement of reasons to be supplied to the applicant when a CO application is denied. This pertinent Department of Defense Directive, Number 1300.6, § VI, F, states: "The reasons for an adverse decision will be made a part of the record and will be provided to the individual." The Army's implementing regulation, AR 135–25, promulgated in its present form on April 11, 1969, provides as follows (para. 10):

Upon determination that neither I–O or I-A-O classification is appropriate, the individual requesting discharge will be advised by his commanding officer that his request has been denied, giving reasons for such denial.

█ In the earlier cases involving review of denials of CO status, the courts staked out that there existed a judicial jurisdiction—a matter once bitterly contested—and a judicial review to assure that there was a basis in fact in the rec-

---

* Citations omitted.

ord for the decision. In the earlier cases the courts did not focus on the need for or content of reasons in the administrative process. There has emerged an increasing awareness, that while the "basis in fact" standard implies a narrower judicial review than the conventional "substantial evidence" rule so far as facts are concerned, and that "the courts are not to weigh the evidence" to determine whether a particular classification is justified, *see* Estep v. United States, *supra,* 327 U.S. at 122, 66 S.Ct. 423, the courts cannot shirk the review necessary to consider whether there was a deviation from requirements of law. In conscientious objector cases, the need for attentive judicial review has been enhanced by the *Seeger* decision, with its departure from the prior construction of the "religious" requirement, a construction more easily understood, applied and enforced than *Seeger's* rule.

■ The courts have come to reject decision-making in conscientious objector cases on unarticulated premises and to adhere to what is now the substantially universal rule that selective service decisions denying *prima facie* claims of conscientious objection cannot be sustained when the record does not sufficiently disclose the board's reasons for its finding.[7] See United States v. Lenhard, 437 F.2d 936, 937 (2d Cir. 1970); Paszel v. Laird, 426 F.2d 1169, 1175 (2d Cir. 1970). Cases from other circuits are collected in Note, Due Process in Selective Service Appeals, 39 U.Chi.L. Rev. 331, 357, n. 144 (1972). And we take note that the Solicitor General has confessed error in a case of a denial of a concededly *prima facie* claim without reasons. Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972). That the Court's thinking was in accord with the Solicitor General's is indicated by Fein v. Selective Service

System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), decided the week before *Joseph,* where the Court referred to the fact that even prior to the 1971 Act the Government had

> acknowledged the appearance of a "relatively recent line of authority" exemplified by United States v. Haughton, 413 F.2d 736 (CA9 1969), to the effect that the failure of a local board to articulate in writing the reason for its denial of a conscientious objector classification is a fatal procedural flaw when the registrant has made a prima facie case for such status. Brief 52–53. The rationale is that some statement of reasons is necessary for "meaningful" review of the administrative decision when the registrant's claim has met the statutory criteria or has placed him prima facie within the statutory exemption, and his veracity is the principal issue. (405 U.S. at 380, 92 S.Ct. at 1072, footnotes omitted)

The *Fein* opinion noted that the Government's *Joseph* memorandum said it would not challenge this newly evolved judicial rule. And *Fein* continues (405 U.S. at 381, 92 S.Ct. at 1072):

> The Government also notes that the requirement for an administrative statement of reasons "seems fully consistent with the new statutory . . . and regulatory . . . provisions on this point." \* \* \* [*Joseph's*] obvious significance for Fein is that if the doctor is ever again called for induction, the rule of *Haughton* will provide a defense for him unless and until the requirements of the new statute and regulations are fulfilled.

■ The requirement of reasons has roots in a judicial rule. It has been fortified by the directive in military regulations that reasons accompany an adverse

7. Years ago, Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955) announced the doctrine that where no reasons are given for a denial of CO status, and the record before the selective service officials contains both valid and invalid grounds for the denial, the denial cannot be sustained because it is impossible to know whether the invalid rather than the valid grounds were relied upon. See also Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971).

decision on a claim of in-service conscientious objection. These regulations, consistent with the underlying statute, had the force and effect of law, and the officials governed by the regulations were without legal authority to ignore or violate them to the detriment of the interests of the applicant. This is a settled rule that has been enforced in a wide variety of contexts,[8] and has full vitality for draft cases and in-service CO issues. *See, e. g.,* Hammond v. Lenfest, *supra,* 398 F.2d at 715, where we said, in discussing the regulations here involved, "a validly promulgated regulation binds the government as much as the individuals subject to the regulation; and, this is no less so because the governmental action is essentially discretionary in nature." See, also, United States ex rel. Donham v. Resor, *supra,* 436 F.2d at 754, quoting United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969): "Such regulations [for discharge of conscientious objectors] once issued

must be followed scrupulously." Certainly this provision of these regulations did not go beyond what Congress permitted; indeed not long afterward, in the 1971 amendment to the 1967 Military Selective Service Act, this provision was affirmatively required.[9]

■■ When there is a requirement of law that reasons be stated by executive officials or administrative agencies responsible for decisions, there is an implicit corollary that the decision must stand or fall on the basis of the reasons stated. This is a general doctrine of administrative law. SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943). *See generally* 2 K. Davis, Administrative Law § 16.01. It has significance for conscientious objector cases, where the decisions reflect the court's increasing awareness of this requirement, both in selective service cases (even before enactment of the 1971 amendments) [10] and in cases of in-serv-

8. Paul v. United States, 371 U.S. 245, 255, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); Vitarelli v. Seaton, 359 U.S. 535, 539–540, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Public Utilities Comm'n of California v. United States, 355 U.S. 534, 542–543, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); Service v. Dulles, 354 U.S. 363, 383–387, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 266–267, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945).

9. P.L. 92–129, 85 Stat. 353 (Sept. 28, 1971), section 36, added a new section 22 to the 1967 Act, now codified in Title 50 of the United States Code, Appendix:

§ 471a. Procedural rights

(a) It is hereby declared to be the purpose of this section to guarantee to each registrant asserting a claim before a local or appeal board, a fair hearing consistent with the informal and expeditious processing which is required by selective service cases.

(b) Pursuant to such rules and regulations as the President may prescribe—

(1) Each registrant shall be afforded the opportunity to appear in person before the local or any appeal board of the Selective Service System to testify and present evidence regarding his status.

(2) Subject to reasonable limitations on the number of witnesses and the total time alloted to each registrant, each registrant shall have the right to present witnesses on his behalf before the local board.

(3) A quorum of any local board or appeal board shall be present during the registrant's personal appearance.

(4) In the event of a decision adverse to the claim of a registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision.

As enacted, this provision deletes a proposal in the original Senate bill guaranteeing the right to appear before a local or appeal board accompanied and advised by counsel. In Fein v. Selective Service System, *supra,* the Court said (405 U.S. at 378, 92 S.Ct. at 1071):

This 1971 addition to the statute does not, by its terms, purport to be retroactive.

However, as appears from our discussion elsewhere of the *Fein* opinion and *Joseph* order, it is arguable that the requirement of reasons in the evolving line of authority, including this court's opinion in *Lenhard, supra,* is applicable to classifications made prior to the 1971 amendment.

10. *E. g.,* Gresham v. Franklin, 315 F.Supp. 850, 853 (N.D.Cal. 1970) ("[I]t is not

ice claims.[11] Otherwise a court, if it sustains a decision by recourse to reasons outside those specified, opens the door to an improper substituting of the court's judgment and evaluation of evidence in place of that of the agency (here the CORB) or official with responsibility. The court's judgment, its reasons and approaches, may not be acceptable to and may even have been discredited by the administrative officials responsible.

Of course, if the reviewing court concludes that the claimant was ineligible for the relief sought as a matter of law—on some ground not dependent on a weighing of evidence, for example if the application on its face showed that the applicant's beliefs had fully crystallized prior to entry into the service— then the appeal would be rejected even though that ground was not articulated by the officer or board involved. But where the range of executive responsibility embraces the latitude to find in favor of the claimant on an issue, the matter must be considered, and if the conclusion is adverse, reasons must be stated, with support in a record basis in fact.

The "basis in fact" doctrine was intended to limit the freedom of a court to substitute its judgment for that of an official or board—by interposing its own weighing of the evidence. That doctrine does not undercut, it rather underlines, the rule that focuses on the reasons assigned by the official or board— for that also is a rule that emphasizes executive responsibility, and limits judicial substitution.

The rule focusing on the reasons stated in the execution or administrative

disposition calls for good sense and reasonableness, and for full awareness that local boards and military officials, who have been assigned the primary responsibility for these basically discretionary decisions in CO cases, "cannot be expected to express themselves with the elaboration of expert regulatory agencies." Paszel v. Laird, *supra,* 426 F.2d at 1175. We will respect the agency's determination as long as we can discern its path. Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 595, 65 S.Ct. 829, 89 L.Ed. 1206 (1945); WAIT Radio v. FCC, 135 U.S.App.D.C. 317, 418 F.2d 1153, 1156 (1969). What we contemplate is that the CORB will identify, and be reviewed on the basis of the identification of, the salient underlying considerations and type of evidence relied on, for example letters from associates, reports of personal demeanor, and lateness in filing an application. This is not a hypertechnical requirement. It is rather the basic pre-condition of any intelligible administrative scheme that has as an important constituent element a provision for judicial review. If indeed it is to be the administrative decision that is reviewed, the administrators must focus the court's attention on the reasons for the decision and the court must review it on those reasons. The court is not a hostile stranger to the official or agency, but rather the two act, in conjunction, with roles in furtherance of justice and the public interest.[12]

The Government contends that a court is not limited to ascertaining whether there is a "basis in fact" to support the reasons given in the CORB's decision, but may "search the record" for other factual evidence in support of the denial. The Government relies on Rosen-

the function of this court to search the record for some basis to affirm the Army's decision when the reasons given therefor are inadequate."

11. United States ex rel. Morton v. McBee, 310 F.Supp. 328 (N.D.Ill. 1970).

12. American Airlines, Inc. v. CAB, 123 U. S.App.D.C. 310, 359 F.2d 624, cert. denied, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.

2d 75 (1966). "[A]gencies and courts together constitute a 'partnership' in furtherance of the public interest, and are 'collaborative instrumentalities of justice.'" Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851–852 (1970), cert. denied 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed. 2d 701 (1971), *citing* United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

gart v. Laird, 449 F.2d 523 (2d Cir. 1971), and this language (at pp. 528–529):

> The standard by which we must be guided on this appeal is whether there exists within the four corners of the record affirmative objective evidence constituting a "basis-in-fact" for the Review Board to conclude as it did that Rosengart's "purported conscientious objective [sic] beliefs are not truly held."

> . . . . . .

> Since the Review Board gave no reasons for its finding of Rosengart's insincerity of belief, . . . we have undertaken our own independent search of the record for facts upon which the Army determination should be appraised.

In *Rosengart* the court did not focus on the Army regulations requiring reasons. The majority opinion refers to the fact that no reasons were given by the Army Review Board for its finding of insincerity, without any allusion to the requirements of AR 135–25(10), or indication of awareness that this was contrary to law.

When certiorari was sought, the Supreme Court vacated this court's judgment in *Rosengart,* see 405 U.S. 908, 92 S.Ct. 931, 30 L.Ed.2d 779 (1972), in response to the Solicitor General's concession that the Review Board's decision was not grounded, as this court had supposed, on a finding that Rosengart's opposition to war was not sincere.[13]

The Solicitor General put it that it was error for this court to have searched the record for evidence to support the finding of insincerity when that was a ground not taken by the Board itself. *Compare* Benway v. Barnhill, 300 F. Supp. 483 (D.R.I.1969). The Supreme Court remanded the case to this court "for reconsideration in light of the suggestions of the Solicitor General and upon independent examination of the entire record." 405 U.S. 908, 92 S.Ct. 931 (1972).

We have carefully considered United States ex rel. Zelman v. Carpenter, 457 F.2d 621 (2d Cir. 1972), and Weissman v. Officer of the Day, 444 F.2d 1326 (2d Cir. 1971), but find critical distinctions from those cases, where the court was concerned with the question posed by selective service boards that had not given any reasons for rejecting a "hardship" classification, and expressly relied on the fact that until the change in statute on September 28, 1971 "the draft board was not required to give any reasons for its decisions" (see 457 F.2d at 622, note 1). We need not consider the effect upon those rulings of Joseph v. United States, *supra,* which was issued the same day as *Zelman,* and Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), discussed above. In any event, the CORB has been and is governed by a regulation expressly requiring a statement of reasons for denial of an in-service conscientious objection claim.

---

13. Supplemental Memorandum for the United States in response to the Petition for Certiorari at pp. 8–9:

> For the reasons stated above, we believe that it would be inappropriate for the government to oppose the petition for a writ of certiorari in this case. We do not disagree with the conclusion reached by the majority below that there was basis in fact on this record to sustain a finding of "insincerity" with respect to petitioner's claimed opposition to war. And it is understandable that the majority of the court of appeals interpreted the Board's September 10, 1970, decision as permitting such a conclusion since the government admittedly overemphasized this decision in its argument below. When, however, the ambiguous language used in the September 10 decision is read, as it properly should be, in the context of the earlier Review Board decisions which were essentially incorporated therein by reference, we conclude that the Board—primarily because it failed to focus on the inconsistent statements discussed by the majority below (Pet. App. 42a–44a)—at all times found petitioner to be sincere in his opposition, as did the various persons who interviewed him, and questioned only the sincerity of the alleged "religious" source of his beliefs.

Moreover, the issue of review when a draft board gives no statement of reasons, leading the court to explore "the grounds upon which the board might have relied" (457 F.2d at 624, 444 F.2d at 1328) is significantly different from the issue presented in a case like this one, where the board has given reasons that are faulty in law. The latter is the problem underlying the Solicitor General's concession in *Rosengart, supra,* and the Supreme Court's order vacating the judgment of this court.

The proper focus of a reviewing court is on the reasons given by the CORB and not on reasons that may come to light if and when a court rummages throughout the record in an effort to reconstruct on what basis the board might have decided the matter. With this as our point of departure, we proceed to a consideration of the CORB's adverse decision on Checkman's application and the reasons it gave for that decision.

C. *Board determination that appellant's beliefs were based on "policy, pragmatism and expediency."*

The main thrust of CORB's memorandum was in support of its finding: "The Board believed that Cadet Checkman's application was based on grounds of policy, pragmatism and expediency." The phrase derives, of course, from the statement in Welsh v. United States, 398 U.S. 333, 342–343, 90 S.Ct. 1792, 26 L. Ed.2d 308 (1970), that conscientious objection status is not intended to be available to

those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely upon considerations of policy, pragmatism, or expediency.

The Board stated that its recommendation of denial was based on statements in the application, and the recommendation of the hearing officer and the commanding officer. We shall consider these in turn.

*The Application*

Checkman's application *prima facie* satisfies the requirements for CO status, including the requirement that beliefs derive from moral, ethical or religious, rather than policy or pragmatic sources.

The CORB stated that the application indicates it "is based on policy grounds." We herewith present the passage quoted by the CORB ((AA 56) and—in brackets—the sentences immediately following (AA 13):

> After [some] careful thought one is led to recognize that political beliefs cannot be separated from moral beliefs. As each "political" question presents itself, an individual who thinks with his heart as well as his head is let to make decisions that are based upon his own morality. [I am unable to distinguish between a political and a moral question. Before I vote for a particular candidate, I look to his political pronouncements and record. I then automatically examine my sense of right and wrong and choose accordingly. What is morally correct must be what is politically right. When politicas [*sic*] becomes amoral it must be discarded by a moral person, and therefore political expediency in place of morality is a game in which I cannot play.]

The CORB never identified what it is about that passage that undercuts Checkman's contention that his beliefs have an ethical, moral source. We think the fair implication of the language quoted by the CORB is that, for Checkman, political judgments cannot control if they are not derived from moral beliefs. But if there was a basis of misunderstanding it came from taking the quoted sentence by itself, ripped from context. The entire passage, including the bracketed material, makes it quite clear that the beliefs are rooted in morality and ethics, and are not "based on policy grounds" as the CORB stated.

*Adverse Recommendations*

The only other sources referred to by CORB for this facet of its decision were adverse recommendations by the hearing officer, Major Weiss,[14] and the commanding officer, Col. Ruff,[15] against approval of Checkman's application. But these officers' comments were not in turn supported by reference to factual evidence. The "mere parrotting . . . of a mere *ipse dixit*," is not enough, see United States v. Corliss, 280 F.2d 808, 814 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960). Here we have only a bare CORB reference to the officers' ultimate conclusion. We cannot sustain the CORB by reference to the statements made by the officers without some indication of their factual basis.

On the record before us, there is no "basis in fact" identified in the CORB's memorandum for a finding of "policy, pragmatism and expediency" short of a finding that his representation as to what his beliefs actually are was not sincere. That, of course, is a separate issue, and will be considered separately.

### D. *Board finding of selective objection to war*

Checkman's application *prima facie* asserts an objection to all war, in any form. The CORB cites passages showing that (a) during his second year in law school the focus of his concern was on the war in Vietnam rather than on war in general and (b) in his application appellant stated (AA 18): that in the event of an attack on the United States, while he would not join in the defense of the nation, he "would probably take steps to personally defend my family and friends."

Checkman's beliefs during his second year in law school do not relate to the relevant time period. His application describes his beliefs as having evolved from selective objection in his early law school period to total objection by the time of his last semester, the point in time at which his application was filed. This point is given emphasis by the settled law of this circuit concerning a "recently matured conscientious objection"—that the "ascension to conscientious objection" is a change in status, and the point in time when the beliefs form is a circumstance beyond the control of the individual involved. Paszel v. Laird, *supra,* 426 F.2d at 1172.

As for CORB's reliance on appellant's statement that his opposition to war would not prevent him from personally defending family and friends from aggressive attack, the government has forthrightly conceded in its brief, as it must, that such reliance was patently improper and does not afford a basis for the CORB's actions. United States v. Purvis, 403 F.2d 555, 563 (2d Cir. 1968) ; United States v. Mantoine (71 Cr. 662, S.D.N.Y., Jan. 5, 1972).

### E. *Board's determination of insincerity*

1. The CORB's finding of insincerity[16] was not accompanied by any reasons, as required by DoD 1300.6 and AR 135–25. That alone precludes affirmance of its decision on grounds of insincerity, on the record as it stands. United States v. Lenhard, *supra;* Paszel v. Laird, *supra.* See Joseph v. United States, *supra.*

2. In an effort to reconstruct a basis-in-fact from the record, the Government and the court below referred to Major Weiss's statement that in his opinion "applicant changes his moral values to meet the situation," Government brief at 6. The District Court referred to a similar statement made by Col. Ruff. Manifestly, the requirement of a CORB

---

14. See AA 65: "Mr. Checkman changes his moral values to meet the situation and for his own convenience."

15. See AA 59: "Mr. Checkman is sincere in his beliefs only because he has convinced himself that fulfillment of his military obligation would interfere with his personal goals."

16. See AA 57: "In summary, the Board did not believe that Cadet Checkman was sincere in his stated conscientious objector beliefs . . . .."

statement of reasons cannot be satisfied by a reference to officers' reports unless those reports contain a statement of reasons; and here the officers' reports gave no reasons for what are otherwise bare conclusory statements. The statement of reasons—by the CORB, or by these officers—cannot consist, simpliciter, of a mere rejection of a *prima facie* presentation of conscientious objection without reference to evidence in the record. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969). *See* Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). We revert to the admonition in United States v. Corliss, *supra,* against "mere ipse dixits." [17]

3. The Government also claims that support for the CORB's insincerity finding is provided by the Statement of Capt. Charles Schauss, one of Checkman's ROTC instructors, and by the timing of his application for discharge.

### Captain Schauss's Statement

 Capt. Schauss's Statement, reproduced in the margin,[18] is an account of a conversation he had with Checkman in mid-December 1970. This was not alluded to by either the CORB or the Hearing Officer.[19] None of the

statements of appellant Checkman related in this document contradict his characterization of his beliefs as morally derived and his opposition to war as not selective. Checkman's statement that his military obligations made it difficult to obtain employment with a law firm simply records a fact of life, at that time, for many young men with pending military obligations. As to Checkman's statement that he had enrolled in ROTC in order to be deferred through law school, this is patently consistent with his account of his gradual, post-ROTC enrollment crystallization of view.

Furthermore, we cannot blind ourselves to the reality that a generous dollop of self-interest motivates many applicants for ROTC—perhaps a desire to delay the date of military service, perhaps a quest for a better berth in which to serve—and such candid remarks cannot fairly be taken as reflecting a kind of underlying character deficiency, especially when no such reference or inference was expressed by the Board.

We turn to Capt. Schauss's recounting that Checkman said that he did not want to undertake military service because to

---

17. In *Corliss* the court took note of the possibility that demeanor evidence might provide a basis for an adverse ruling (see 280 F.2d at 814), but its further notation of the problem that is inherent when a decision is being made by a board or tribunal that did not hear the witness (280 F.2d at 814–815, and notes 3 and 4), and its insistence that mere ipse dixits cannot suffice, results in a requirement that, at a minimum, the objective record needed to sustain a finding of insincerity on ground of demeanor contain a statement by the hearing officer expressly rejecting testimony on the basis of demeanor. There is no such statement in the record before us.

18. See AA 61:
 During the fall term of the 1970–71 school year Mr. Checkman was unable to attend regular class in the Military Science due to his cross-enrolled status. As a result of the above situation, Mr. Checkman was attending a special class given by me to meet the requirements of the course.

In mid December, during a discussion on the jobs of the newly commissioned officer, Mr. Checkman made a remark to the fact that he really didn't want to undertake military service, as it would be an inconvenience to him, in attempting to undertake the practice of law. Mr. Checkman also remarked that at that time it was rather hard to obtain a permanent position with a law firm because of his military obligation.
 Later during this same conversation, Mr. Checkman also remarked that the only reason he had enrolled in the ROTC program was to allow him to continue his studies, as he was about to be drafted and could not obtain a deferment to continue his studies.

19. We need not consider the implication that may be fairly drawn. The question is whether the CORB memorandum and the circumstances indicate with fair assurance that the evidence now sought to be relied on, was in fact relied on by the CORB.

do so would interfere with his law career.

We need not consider whether Capt. Schauss's Statement might have formed the basis for an adverse recommendation by a CORB which expressly referred to the Statement and furnished an analysis revealing its significance and pertinence to the inferences drawn. Whatever concepts of deference to the executive might be applicable in such a case, in the case at hand all we have is a reference by counsel (not the CORB) to Capt. Schauss's Statement; and we cannot be confident that this is what the CORB had in mind as its reason for denial of the claims.[20]

## Timing of Application

■ The District Court, citing *Dix,* noted that "the Board could properly consider the lateness in filing the application." We agree.[21] In *Dix* this court said, 449 F.2d at 318:

> Moreover, Dix's application was not filed until after he had been ordered to Vietnam. Such belatedness was properly considered in assessing Dix's sincerity. United States v. Gearey, 379 F.2d 915, 919 (2d Cir.), cert. denied, 389 U.S. 959 [88 S.Ct. 335, 19 L.Ed.2d 368] (1967).

But the difficulty is that in this case —unlike *Dix* or *Geary*—we have no indication in the record that lateness was "considered" by the Board and relied on in rejecting appellant's claim. We have already set forth in some detail the basis of the Board's memorandum, and there is not a word about lateness. We

do not require, and we do not purport to require, that the CORB set forth meticulous findings with the same care and polish as a district court. But the CORB does have the benefit of a hearing conducted by, and a recommendation made by, a hearing officer "knowledgeable in policies and procedures relating to conscientious objector matters," United States ex rel. Donham v. Resor, *supra,* 436 F.2d at 754. We must have enough indication of the reasons for adverse determination to discern the substance of the decision under review, and determine —without any weighing of evidence or facts—that it does not depart from the applicable rules of law.

As *Donham* makes clear, the issue of timing is not a simple one—especially in the context of a claim of evolving views —and will rarely if ever serve as a sole basis for denying a CO claim.[22] *Donham* also stresses that while there is no requirement of technicalities, there is a requirement of adherence to a "policy of reasonable common sense fairness."

These considerations, in the context of a regulation requiring that reasons be stated, simply do not permit us to sustain a CORB decision on the conjecture that it could have been based, or at least materially supported, by the timing factor, when the objective record is barren of any reference whatever to that factor. Of course the official or board is not required, or even expected, to discuss every item of fact or opinion included in the record; but the reasons required by rule and regulation must at least embrace the major points underlying the decision,

20. See discussion in Section II, B, of this opinion.

21. Consideration of lateness in filing as a material factor in judging the sincerity of the applicant's beliefs does not present the serious questions that would arise if denial of CO status were sought to be supported solely on the basis of lateness in filing. Compare Capobianco v. Laird, 424 F.2d 1304 (2d Cir. 1970); United

States v. Geary, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368, reh'g denied, 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967).

22. With *Donham, supra,* 436 F.2d at 753–754, *compare* United States ex rel. Brooks v. Clifford, 409 F.2d 700, 707 (4th Cir. 1969).

and identify the reaction resulting in the adverse decision.[23]

#### F. Relationship of Requirements of Basis in Fact and Reasons

█ The requirement that the CORB determination have a "basis in fact" in objective evidence is one that is satisfied whether or not that basis is set. forth in the formal opinion of the CORB, so long as it appears in the record. But the "basis in fact" doctrine must be taken together with the separate legal requirement of reasons. The result is that the material to be found in the record—which under the basis in fact doctrine need not be as comprehensive as "substantial evidence," though it cannot be a mere "scintilla"—need not be identified by the CORB but must relate to the "reasons" stated by the CORB.[24] Otherwise there is the plain danger of a judicial decision on grounds not taken by the CORB, a danger highlighted by the Solicitor General's memorandum in *Rosengart*.

█ The regulation's requirement that the CORB state its "reasons" is a requirement of "logical reasons," as Judge Lumbard noted in his dissenting opinion in Rosengart v. Laird, *supra*, 449 F.2d at 537 and n. 11. This is a meaningful requirement, and one that cannot meaningfully be satisfied by a bare recitation by the CORB of the ultimate statutory criteria[25]—which in the case of conscientious objection require (a) opposition to all war that is (b) ethically or morally derived and (c) sincerely held.

In the last analysis, what is comprehended by "reasons" is itself governed by a rule of reason, but it is essentially a requirement that the salient facts be identified. It does not necessarily require an analysis or even reference to the individual items in the record underlying the determination—though ordinarily the "reasons" of the CORB will include some reference to *e. g.*, affidavits, or reports of interview, etc., that have led the CORB to its conclusion—and individual items of "objective" evidence in the record will be available to show that the CORB's determination has a "basis in fact" even though not referred to by the CORB.

### III. CONCLUSION

█ We conclude that the order dismissing appellant's petition for habeas corpus relief cannot be affirmed. While an applicant with an in-service claim of conscientious objection is not entitled to a letter-perfect proceeding, he must be accorded a consideration that is fair and in accordance with requirements of law.

The record reveals patent and prominent errors and confusions, on the part of the CORB, that preclude any judicial judgment that the board accorded such consideration to appellant's claim.

█ If we were confronted only with the inadequacies of the findings on sincerity, where the Government claims that factors and evidence in the record were taken into account but there may have been only an error of omission in the failure to identify these in the rea-

23. Compare Automotive Parts & Accessories Ass'n v. Boyd, 132 U.S.App.D.C. 200, 407 F.2d 330, 338 (1968).

24. *See, e. g.*, Lovallo v. Resor, *supra*, 443 F.2d at 1265, where this court reversed the order of the District Court granting a writ of habeas corpus for an Army enlistee because of our finding that "[t]he Board's opinion does, therefore, disclose a legally sufficient reason for its denial [of CO status]." It was our view that the CORB's finding of insincerity, based on an analysis of three affidavits, was supported by the contents of two of the

affidavits. *And see* Paszel v. Laird, *supra*, 426 F.2d at 1175, in which we remanded to the District Court to give the Selective Service System "an opportunity to explain the grounds for its rejection of Paszel's request to reopen" because "the record does not sufficiently disclose the board's reasons for its finding."

25. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 533, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291 (1931).

sons required by law, we might give consideration to an order that permitted amplification at a remand hearing by the CORB members, along the lines suggested in United States v. Gearey, 368 F.2d 144, 151 (2d Cir. 1966) and United States v. Deere, 428 F.2d 1119 (2d Cir. 1970).

But there is no binding requirement that such a procedure be followed when the circumstances of the case indicate that there is no substantial possibility of an acceptable reconstruction of the basis for the classification decision by means of the testimony of the decision-making officials. United States v. Jakobson, 325 F.2d 409, 417 (2d Cir. 1963), aff'd sub nom., United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

Here there are errors of commission—not debatable or technical inadequacies, but palpable misunderstandings and confusions—pervading the findings of expediency and selective opposition. The general requirement that a court concerned with the validity of an executive determination appraise whether the invalid reasons have not infected the entire decision[26] must be given at least modest scope in the difficult area of conscientious objection cases.[27]

In the case before us, where the CORB decision stands without sufficiently clear legal support, we conclude that sound exercise of the appellate function, see 28 U.S.C. § 2106, requires that we remand the case to the District Court with instructions to grant appellant's petition four weeks hence (with discretion to extend the time), unless within that time the Government arranges for a new CORB consideration and processing on a basis that is shorn of the errors identified above.

Reversed and remanded.

**26.** Braniff Airways, Inc. v. CAB, 126 U.S. App.D.C. 399, 379 F.2d 453, 466 (1967); NLRB v. Reed & Prince Mfg. Co., 205 F. 2d 131, 139 (1st Cir.), cert. denied, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953).

**27.** *Compare* Clay v. United States, 403 U. S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); United States ex rel. Levy v. Cain, 149 F.2d 338 (2d Cir. 1945).