CONFERENCE OF STATE
BANK SUPERVISORS,
et al., Plaintiffs,

v.

OFFICE OF THRIFT SUPERVISION,
et al., Defendants.

Civ. A. No. 92–1048 (RCL).

United States District Court,
District of Columbia.

June 25, 1992.

Ernest Gellhorn, Beth Heiftz, Jones, Day, Reavis & Pogue, Washington, D.C., for CSBS.

Leonard J. Rubin, Bracewell & Patterson, Washington, D.C., for IBBA.

Harris Weinstein, Carolyn B. Lieberman, Thomas J. Segal, Steven W. Dimmictt, Dirk S. Roberts, Office of Chief Counsel, Office of Thrift Supervision, Washington, D.C., for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court upon the parties' cross-motions for summary judgment. Plaintiffs in this case are the Conference of State Bank Supervisors ("CSBS"), a professional association of state government officials responsible for chartering and regulating more than 10,000 state-chartered commercial banks and state-chartered savings institutions, and the Independent Bankers Association of America ("IBAA"), a non-profit membership association that represents over 6500 federal and state-chartered banks (referred to collectively as "plaintiffs"). Defendants in this matter are the Office of Thrift Supervision ("OTS") and Timothy Ryan, the director of OTS (referred to collectively as "OTS" or "defendants").

On May 1, 1992, plaintiffs filed their complaint for declaratory and injunctive relief. Plaintiffs also filed a motion for preliminary injunction. On May 8, 1992, the court denied plaintiffs' motion for preliminary injunction. The parties subsequently filed the motions for summary judgment that are presently at issue.

## I. FACTS

There is no genuine issue as to any of the material facts in this case. *See generally* Complaint; Plaintiffs' Statement of Material Facts Not in Dispute; Defendants' Statement of Material Facts as to Which There is no Genuine Issue. In their complaint, plaintiffs challenge a regulation which permits interstate branching by federal savings associations. Although prior to the adoption of this rule, OTS's general policy prohibited interstate branching by federal savings associations, interstate branching in various forms has been authorized for some time.[1]

---

1. For example, since at least 1967, the Federal Home Loan Bank Board ("FHLBB"), OTS's predecessor agency, had permitted interstate branching by federal savings associations to the extent that state law permitted such branching by a similar, state chartered institution. 32 Fed.Reg. 20630 (Dec. 21, 1967). Since 1972, federal associations that had converted from a state charter were allowed to retain their pre-existing out-of-state facilities under certain conditions. 37 Fed.Reg. 3987 (Feb. 25, 1972).

In 1981, the FHLBB approved a policy statement which provided that under some circumstances it would approve mergers, consolida-

tions or acquisitions resulting from interstate branch operations in order to prevent the failure of federally-insured institutions. Moreover, the Garn–St Germain Depository Institution Act of 1982, which was re-enacted in FIRREA, explicitly permits interstate branching by federal associations under certain circumstances. *See* 12 U.S.C. § 1464(r).

In addition, in 1981 the FHLBB permitted associations that had established a branch in a state other than its home state through a supervisory acquisition to establish additional branch offices in that state with the FHLBB's approval. *See* 47 Fed.Reg. 45120 (September 10, 1981). In

On December 30, 1991, OTS published a proposed rule entitled "Policy Statement on Branching by Federal Savings Associations, for comment in the Federal Register." Administrative Record ("A.R.") 215; 56 Fed.Reg. 67236 (Dec. 30, 1991). This proposed rule introduced OTS's new policy that would permit nationwide branching of federal associations to the full extent allowed by federal law. The purpose of this proposal was to improve the safety and soundness of the industry. The proposed rule requested comments and required that any comments be submitted within 30 days. The summary of the proposed rule stated that:

> The ... [OTS] proposes to amend its policy statement on branching on federal savings associations. The proposed amendment deletes current regulatory restrictions on the branching authority of federal savings associations to permit nationwide branching to the extent allowed by federal statute. The amendment is intended to facilitate consolidation and geographic diversification among savings associations, and thereby foster safety and soundness, and to improve the quality of services available to customers. The proposal also clarifies a provision regarding examination of a branching applicant's past record of compliance with the Community Reinvestment Act [CRA] and otherwise updates and streamlines the branching policy statement by deleting some provisions and consolidating the remaining paragraphs by subject matter.

56 Fed.Reg. at 67236.

The notice of the proposed rule also reviewed the statutory authority for the rule. OTS noted that Congress had given the FHLBB and OTS "exceptionally broad authority to regulate from 'cradle to grave' the branching operations and other activities of federal thrifts." *Id.* at 67237 (footnote omitted) (referring to the Home Owners' Loan Act, 12 U.S.C. § 1464(r)

("HOLA"), which has been applicable to federal associations since the enactment of the Garn–St Germain Act of 1982). The notice then states that "[o]n numerous occasions the courts have confirmed that the OTS's authority in this respect is plenary and not bounded by any restrictions of state law." 56 Fed.Reg. 67237. Pursuant to this authority, therefore, federal savings associations may be allowed to branch on an interstate basis." *Id.* (footnote omitted).

The proposal then provided the reasons that OTS was considering allowing nationwide branching by federal associations. OTS stated that:

> [a]llowing federal savings associations to branch interstate to the full extent permitted by statute will enable thrifts to diversify geographically their operations and thereby enhance safety and soundness. Associations with interstate networks will be able to diversify their loan portfolios and lines of business, and thereby spread the risk of losses resulting from fluctuations in regional economies. Some associations that are currently subsidiaries of multiple savings and loan holding companies also may be able to reduce costs and enjoy economies of scale by consolidating operations into one association.

*Id.*

OTS recognized that permitting interstate branching will not, in and of itself, prevent future costly failures of thrift institutions. *Id.* OTS stated, however, that when coupled with the new safeguards that are provided in FIRREA, interstate branching "can be an important cornerstone in a new foundation of institutional safety and soundness." *Id.* OTS concluded that:

> nationwide branching authority for federal savings associations will enhance the safety and soundness of the industry, reduce operating costs, increase healthy competition among depository institu-

---

1986, the FHLBB further liberalized its interstate branching policy by permitting federal associations that are acquiring failing institutions to obtain branching rights in other states. *See* 51 Fed.Reg. 16286 (May 2, 1986). Also in 1986,

the FHLBB permitted non-supervisory branching by federal thrifts if state law permitted such branching for state chartered thrifts. *See* 51 Fed.Reg. 16501 (May 5, 1986).

tions, and improve the quality of services furnished to customers. These benefits will help decrease the risk to the SAIF deposit insurance fund and, ultimately, to the taxpayer.

*Id.*[2]

OTS received 81 comments in response to this proposal, including comments from CSBS and IBAA. 57 Fed.Reg. at 12204. Sixty-nine of these comments opposed the proposal for various reasons. *Id.* Some commenters criticized the merits of the proposed rule, arguing that the rule would encourage unsound practices and that interstate institutions would not be responsive to the needs of local businesses and other types of consumers. *Id.* Other commenters opposed the rule on procedural grounds. *Id.*

On April 9, 1992, OTS published the final rule which permitted interstate branching by federal associations. 57 Fed.Reg. 12203 (April 9, 1992). This rule became effective on May 11, 1992. The language of the final rule is virtually identical to that of the proposed rule. In Section I(C) of its final rule, which is entitled "OTS Response to Comments and Reasons for Expanded Interstate Branching," OTS stated that it "carefully considered all the comments received during the comment period, and several that were received after expiration of the comment period." *Id.* In this subsection, OTS noted its belief that interested parties had adequate opportunity to consider and comment upon the proposal.

OTS then listed seven reasons for adopting the rule substantially as it was proposed. *Id.* at 12204–12205. The first was that OTS has the authority to regulate branching. *Id.* at 12205. This authority is not challenged by plaintiffs in this matter and thus need not be discussed further. Second, according to OTS, interstate

branching of federal associations will, "enhance safety and soundness by facilitating geographical diversity in both the operation and loan portfolios of insured institutions. This diversity will reduce the vulnerability of thrifts to declines in the economies of a particular state or region." *Id.* Third, OTS asserts that this rule will allow many federal associations to reduce their operating costs by increasing their efficiency and developing economies of scale, such as consolidating personnel and operations functions. *Id.*

The fourth reason that OTS provided for adopting this rule is that interstate branching is likely to "stimulate and increase" healthy competition among federal institutions by eliminating the barriers that heretofore have prevented out-of-state associations from competing in any given market. *Id.* Fifth, OTS states that this increase in competition will also serve to improve the customer services that federal associations provide and encourage greater availability of customer services in many markets. *Id.* Sixth, according to OTS, the increased financial stability that this rule affords will reduce the risk to the SAIF. *Id.* at 12205–06. Finally, OTS states that because this rule is designed to promote safety and soundness in the federal thrift industry and because the rule does not impose any new requirements that may increase the operating costs or otherwise hurt federal associations financially, this rule will not have any " 'significant economic impact' on small entities for purposes of the Regulatory Flexibility Act [RFA]."[3] *Id.* at 12206.

Section II of the final rule sets forth the text of the actual rule. The rule eliminates the previous limitations that prevented federal savings associations from interstate branching with three limited statutory exceptions.[4] *Id.* This section also specifical-

---

**2.** SAIF stands for the Savings Association Insurance Fund.

**3.** As a result of this finding, OTS determined that no analysis under the RFA is required. 57 Fed.Reg. 12206. For this same reason, OTS also determined that a regulatory impact analysis pursuant to Executive Order 12291 would not be required. *Id.*

**4.** The three exceptions are: a prohibition on the establishment or operation of a branch outside the association's home state if such branching would violate section 5(r) of the HOLA; a prohibition against any branching that would result in the formation of a multiple savings and loan holding company controlling savings associations in more than one state in violation of section 10(e) of the HOLA; and a prohibition

ly provides that this regulation preempts any state law or regulation that purports to address this subject. Finally, the rule states that federal associations that wish to branch interstate must meet certain capital requirements to establish branches in other states. *Id.*

Plaintiffs, in their complaint, challenge this rule on four grounds. In count one, plaintiffs assert that the rule is arbitrary and capricious because it lacks a reasoned basis. Plaintiffs state that OTS did not adequately explain the basis for its action. In count two, plaintiffs claim that the rule is arbitrary and capricious because it is not adequately supported by the record. In count three, plaintiffs allege that the rule is arbitrary and capricious in that OTS failed to explain why it reversed its longstanding policy with respect to interstate branching. Finally, in count four, plaintiffs assert that OTS did not follow the proper procedures when adopting this rule.

## II. ANALYSIS

The language of Rule 56(c) of the Federal Rules of Civil Procedure indicates that summary judgment is appropriate when examination of the record as a whole reveals "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In examining the record, the court must view all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Plaintiffs' challenges in this matter fall into two general categories; the propriety of OTS's rulemaking procedures and the adequacy of the substantive basis for the rule itself. As to the propriety of the rulemaking procedures, the Administrative Procedure Act ("APA") provides that a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be without observance of

procedure required by law." 5 U.S.C. § 706(2)(D) (1988).

With respect to plaintiffs' assertions that defendants lacked a substantive basis for adopting this rule, pursuant to the APA, a court reviewing agency action will hold unlawful and set aside agency action, findings and conclusions that are found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). In general, this standard of review is highly deferential and presumes agency action to be valid. *See Environmental Defense Fund, Inc. v. Castle*, 657 F.2d 275, 283 (D.C.Cir.1981) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). The court must affirm the agency's decision if a rational basis for that decision exists, even if the court disagrees. *Castle*, 657 F.2d at 283. While deferential to agency action, the court's review of the facts must be searching and careful; the agency's action must be based on a consideration of relevant factors. *Id.* The scope of the court's review of agency action is usually confined to the full administrative record before the agency at the time the agency action was taken. *Volpe*, 401 U.S. at 420, 91 S.Ct. at 825.

The court shall address each of plaintiffs grounds for summary judgment in turn, starting with plaintiffs' procedural challenges. In count four of their complaint, plaintiffs claim that OTS failed to follow the prescribed procedures in promulgating the rule. Thus, in their motion for summary judgment, plaintiffs make three procedural challenges to the rule. Defendants also move for summary judgment on procedural grounds, asserting that plaintiffs' procedural claims are without merit.

Plaintiffs' first procedural claim is that OTS failed to satisfy the APA's notice requirement in that OTS did not provide the bases for its proposed rule. Plaintiffs assert that because OTS did not disclose either the facts or studies upon which the

against branching by any association in violation of § 13(k)(4) of the FIDA, 12 U.S.C.

1823(k)(4). *See* 57 Fed.Reg. at 12206.

proposed rule was based or why contrary evidence was rejected, plaintiffs were denied the ability to provide meaningful comment as to the relevance and quality of any facts or studies that OTS relied upon in proposing this rule. Plaintiffs conclude that the result of this allegedly improper notice is that the rule is "one-sided and mistaken."

■ Section 553(b)(3) of the APA requires that notice of a proposed rule contain "either the terms *or* substance of the proposed rule *or* a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3) (emphasis added). The APA does not require that interested parties be provided precise notice of each aspect of any regulation that is ultimately adopted. *Forester v. Consumer Products Safety Commission*, 559 F.2d 774, 787 (D.C.Cir. 1977). Rather, notice is "sufficient if it affords interested parties a reasonable opportunity to participate in the rulemaking process." *Id.* (cites omitted). *See also Connecticut Light & Power Co. v. Nuclear Regulatory Commission*, 673 F.2d 525, 530 (D.C.Cir.) *cert. denied* 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982) ("*Connecticut Light*") (in which the United States Court of Appeals for the District of Columbia Circuit held that notice of a proposed rulemaking should provide an accurate picture of the agency's reasoning so that interested parties may comment meaningfully upon the agency's proposed rule); *Florida Power & Light, Co. v. United States*, 846 F.2d 765, 772 (D.C.Cir.1988), *cert. denied* 490 U.S. 1045, 109 S.Ct. 1952, 104 L.Ed.2d 422 (1989).

In the present case defendants provided adequate notice of the terms and substance of the rule because the language of the final rule was published virtually verbatim in the proposed rule. *See Connecticut Light*, 673 F.2d at 532–33 (in which the court stated that an "important" factor in its decision to reject plaintiff's claim that the agency's notice was insufficient was the fact that the actual impact of the final

rule was "very similar to what it would have been if the proposed rule had gone into effect.")

■ Plaintiffs assert, however, that in order to provide an accurate picture of the agency's reasoning, the agency must give notice of the studies and data it relied upon in making its decision. As authority for this proposition plaintiffs rely upon *Connecticut Light*, 673 F.2d at 532, and *United States v. Nova Scotia Food Products Corp.*, 568 F.2d 240, 251–52 (2d Cir.1977). While the court recognizes that under some circumstances agencies must identify the specific studies or data that they rely upon in arriving at their decision, the court finds that the present case is not one of those circumstances.

In *Connecticut Light*, the agency made "little reference" to the technical material that it relied upon in coming up with its proposed rule. *Connecticut Light*, 673 F.2d at 532. The court stated that "it would have been a better practice for the [agency] to have identified these technical materials specifically in the notice of proposed rulemaking." *Id.* This statement does not apply to the present case because unlike the agency in *Connecticut Light*, OTS did not rely upon any particular studies or data in deciding to publish the proposed rule.[5] Rather OTS relied upon its expertise and knowledge of the industry.

Plaintiffs' reliance upon *Nova Scotia Food Products* is similarly misplaced. In this case, the agency relied upon scientific data. The court held that "[w]hen the basis for a proposed rule is a scientific decision, the scientific material which is believed to support the rule should be exposed to the view of interested parties for their comment." *Nova Scotia Food Products*, 568 F.2d at 252. Again, in the present case, the proposed rule did not rely upon any specific studies, scientific or otherwise. Thus, defendants' notice in the present case was entirely adequate.

---

5. Even though OTS did not rely upon any particular studies or data in its proposed rule, several commenters did. Accordingly, after the comment period had closed, OTS reviewed the relevant studies that were cited by the commenters and concluded that the interstate branching rule would benefit the federal savings associations industry. *See* A.R. 1302–11.

■ Plaintiffs' second procedural claim is that the 30–day comment period was inadequate under the circumstances. Plaintiffs recognize that the APA requires "only that an agency give interested parties an opportunity to participate in the rule making." 5 U.S.C. § 553(c). Plaintiffs assert, however, that the 30–day comment period that was afforded by OTS in the present case is unreasonable in light of "who is affected by the rule, the amount and nature of the information available to such [affected] persons, and their ability to provide effective comment under the circumstances."

The court shall deny plaintiffs' motion on this ground as well. OTS is not required to provide more than 30–days for public comment, *see* 5 U.S.C. § 553(c), and the court cannot find that the 30 day comment period that was provided was unreasonable. *See Connecticut Light*, 673 F.2d at 534. Plaintiffs fail to show that the comment period was insufficient to allow them the opportunity to consider the rule and its supporting analysis and provide meaningful comment, especially in light of the comments that they and other interested parties submitted in response to this proposed rule. *See* A.R. 1000–04 and 2008–14. *See also Florida Power & Light*, 846 F.2d at 772 (in which the court upheld a fifteen-day comment period because it allowed petitioners a substantial period to consider the rule and its supporting data and because the agency had received 61 comments and these comments had an effect on the rule.)

■ Plaintiffs' third procedural ground for summary judgment is that OTS did not provide adequate notice that the final rule would preempt state law. Plaintiffs claim that an agency must provide some notice as to each issue that is addressed by the final rule and that in the present case they were not "sufficiently apprised" that the final rule would preempt any state law. According to plaintiffs, the proposed rule neither explicitly states nor implies that the final rule would preempt state law. Defen-

dants, on the other hand, assert that the notice was adequate because the very nature of the proposed rule necessarily preempts any state authority over interstate branching of federal associations.

The court agrees with defendants. The purpose of the notice requirement in the APA is to permit interested parties to comment meaningfully. *Florida Power & Light*, 846 F.2d at 771. In the present case, the proposed rule stated that OTS proposed to "permit nationwide branching to the extent allowed by federal statute." 56 Fed.Reg. at 67236–37. This notice is clearly sufficient to put plaintiffs on notice that this regulation would preempt state · law and allow plaintiffs to comment meaningfully on this subject.

Moreover, numerous commenters, including plaintiff IBAA, recognized that the proposed rule preempted any state laws that purported to regulate interstate branching by federal associations.[6] IBAA noted in its comment that the OTS proposes overruling individual states' branching laws. A.R. 1004. In light of these comments, the court cannot find that interested parties, especially IBAA, were not on notice of the preemption aspect of this rule. *See American Federation of Labor v. Donovan*, 757 F.2d 330, 339 (D.C.Cir.1985) (in which the court stated that "[i]t would be passing strange for a party which had recommended in its comments that certain changes be made to a regulation later to complain that it had inadequate notice.") Thus, the notice as to this aspect of the rule was adequate. Accordingly, the court shall deny plaintiffs' motion for summary judgment on each of their procedural grounds and shall grant summary judgment in favor of defendant on plaintiffs' procedural challenges.

■ Plaintiffs' remaining three challenges go to the substance of the rule itself. In the first of these substantive challenges, plaintiffs claim that the final rule is arbitrary and capricious because the statement of basis and purpose does not

6. *See e.g.* A.R. 1004, 1017, 1022, 1032, 1036, 1040, 1044, 1061, 1078, 1085, 1091, 1093, 1095, 1116, 1126, 1127, 1128, 1132, 1142.

contain a reasoned analysis that supports the rule. This challenge goes to counts one and two of plaintiffs' complaint. Plaintiffs assert that the APA requires that agency rules include a general statement of the rule's basis and purpose and that this statement must enable a reviewing court to determine the major policy issues that are involved and why the agency reacted to them as it did. Plaintiffs allege that the statement of basis and purpose in the present case is conclusory and provides no analysis or insight into OTS's reasoning.

Defendants, in their own motion for summary judgment and in their opposition to plaintiffs' motion, assert that the statement of basis and purpose in this case is entirely adequate. The court agrees with defendants.

Section 553(c) of the APA states that an agency that adopts a rule by notice and comment rulemaking must provide a "concise general statement of [the rule's] basis and purpose." 5 U.S.C. § 553(c). This statement need not be comprehensive. *Connecticut Light*, 673 F.2d at 534. Rather, the statement should indicate the major policy issues that are raised and explain why the agency responded to them as it did. *Independent U.S. Tanker Owners Committee v. Dole*, 809 F.2d 847, 852 (D.C.Cir.) *cert. denied sub nom. Atlantic Richfield Co. v. Independent U.S. Tanker Owners Committee*, 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). The statement need only "indicate sufficiently the agency's reasons for the rule[ ] selected, so that the reviewing court is not faced with the task of 'rummaging' through the record to elicit a rationale of its own." *Connecticut Light*, 673 F.2d at 534–35 (citing *United States ex rel. Checkman v. Laird*, 469 F.2d 773, 783 (2d Cir.1972); *American Public Transit Association v. Lewis*, 655 F.2d 1272, 1278 (D.C.Cir.1981); *Harborlite Corp. v. ICC*, 613 F.2d 1088, 1093 n. 9 (D.C.Cir.1979)).

In the present case, the rule's statement of basis and purpose clearly meets this standard because it fully explains the issue involved and the reasons that OTS acted as

it did. In this statement, OTS makes clear that the purpose of this rule is to improve the safety and soundness of federal associations. OTS then states that interstate branching by federal associations would improve the safety and soundness of the industry and provides seven reasons to support this policy, including increasing geographic diversity, reducing operating costs, increasing healthy competition and promoting economies of scale.[7]

Plaintiffs' second substantive claim is that the final rule is arbitrary and capricious because OTS failed to provide adequate reasons for reversing its policy on interstate branching. This claim goes to count three of plaintiffs' complaint. Defendants do not dispute that this rule reverses their policy on interstate branching. Defendants assert in their motion for summary judgment and in their opposition to plaintiffs' motion, however, that their change in policy is adequately supported by reasoned analysis. Defendants claim that they examined the relevant data and that they provided a reasoned explanation for the rule itself. The court agrees with defendants.

An agency may always change its mind and alter its policies. When an agency reverses its policy, however, it must supply a reasoned analysis for the change. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual*, 463 U.S. 29, 41, 103 S.Ct. 2856, 2865–66, 77 L.Ed.2d 443 (1983). The departure from past policy amplifies the need for an adequate explanation of the new policy. *Simmons v. Interstate Commerce Commission*, 829 F.2d 150, 156 (D.C.Cir.1987). In the present case, OTS provided a reasoned basis for adopting the policy of allowing interstate branching by federal associations. OTS enumerated seven facially valid reasons for its decision to allow interstate branching by federal associations. Accordingly, summary judgment shall be granted for defendants on this ground and plaintiffs' motion shall be denied on this ground.

---

**7.** These reasons are set forth in more detail

*supra. See also* 57 Fed.Reg. at 12205–06.

■ Plaintiffs' final claim is that the rule is arbitrary and capricious because OTS failed to provide a reasoned response to material comments. Plaintiffs claim that OTS did not respond to material comments either in its statement of basis or purpose or in the administrative record. Plaintiffs further assert that in the event that OTS did respond to material comments, its responses were conclusory or cursory in fashion. Plaintiffs assert that this failure has subverted their right to provide meaningful comment pursuant to 5 U.S.C. § 553(c).

Defendants respond by noting that agencies are not obligated to respond to every comment that is submitted. Rather, agencies need only respond to the major issues that are raised in the comments. Defendants assert that their responses to the comments in this case were sufficient.

■ The court finds that OTS adequately responded to the comments that were submitted in response to the proposed rule in this case. Section 553(c) states that:

the agency shall give interested persons an opportunity to participate in the rule making through submissions of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise and general statement of their basis and purpose.

5 U.S.C. § 553(c). This section has never been interpreted to require an agency to respond to every comment submitted or analyze every issue that is raised. *Thompson v. Clark*, 741 F.2d 401, 408 (D.C.Cir. 1984) (citing *Automotive Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C.Cir.1968)). Rather, the agency need only respond "in a reasoned manner to significant comments." *United States Satellite Broadcasting Co. v. Federal Communications Commission*, 740 F.2d 1177, 1189 (D.C.Cir.1984) (cites omitted).

In the present case, the court finds that OTS adequately responded to the major issues that were presented in the comments in Part B of the final rule. *See* 57 Fed.Reg. at 12204. In this section of the rule, OTS noted that commenters criticized the proposed rule primarily because it would jeopardize the SAIF, because interstate federal associations would not be responsive to the needs of local businesses and consumers, and because interstate branching would damage competition. OTS responded to each of these concerns in its general statement of basis and purpose.[8] *See supra;* 57 Fed.Reg. 12204–06.

---

8. In this motion for summary judgment, plaintiffs point to two specific comments that they claim were not adequately responded to by OTS. First, plaintiffs point to a comment that was submitted by the Commissioner of the Utah Department of Financial Institutions. A.R. 1128–30. The Commissioner stated that if interstate branching is to be permitted, it should be allowed only in the form of acquisitions of existing associations and not by *de novo* establishment of federal associations in other states. *Id.* The Commissioner stated that prohibiting *de novo* branching would curtail undesirable growth and thus limit the problems that come with overcapacity and excess supply of financial services. *Id.* OTS responded to this concern in its statement of basis and purpose. OTS noted that some commenters argued "that interstate branching siphons capital and other resources from local markets and creates an overcapacity of products and services that adversely affects competition." 57 Fed.Reg. at 12204. As is noted *supra*, however, OTS considered these comments and determined that interstate branching would in fact increase healthy competition.

Plaintiffs also state that OTS failed to respond adequately to "the transition period" that was suggested by the American Bankers Association. A.R. 1009. When read in full, however, this comment does not specifically suggest that OTS adopt a transition period. Rather, this comment describes of a variety of proposals that were put before Congress when Congress was considering relaxing the statutory restrictions upon interstate branching by banks. A.R. 1009–10. The commenters merely expressed their regret that OTS's proposed rule did not reflect the same "balance" of factors that Congress considered. *Id.* The court finds that this specific reference to a transition period does not amount to a material comment or issue that OTS must respond to in light of the way in which it was presented. OTS properly considered the larger material concern of many commenters that the proposed rule was contrary to the will of Congress because Congress considered and rejected proposals to allow branching by banks. *See* 57 Fed.Reg. at 12204. OTS adequately responded to these comments by noting that unlike interstate branching by

Consequently, plaintiffs' motion for summary judgment on this ground shall be denied.

For the foregoing reasons, plaintiffs' motion for summary judgment shall be denied on all grounds and defendants' motion for summary judgment shall be granted on all grounds.

banks, Congress has expressly authorized inter-

state branching by thrifts. *Id.* at 12205.